Tompkins, J.,
delivered the opinion of the Court.
It appearing from the record that the Circuit Attorney, on the part of the State, filed a petition in the Circuit Court of St. Louis county, to foreclose a mortgage made by Loper to the State. Loper pleaded that the mortgage was made in consideration of certain hills of credit, commonly called loan office certificates, which were emitted and loaned to him by the State, in violation of the Constitution of the United States. To this plea the State demurred, and had judgment.
The counsel for the plaintiff in error made several points, of which the following only will he considered in this opinion :
First. That loan office certificates are bills of credit, in the sense of the Constitution.
Second. That the act of lending the loan office certificates, is the very act of emission prohibited by the Constitution, and that in such case the condition of the defendant is best.
The principle involved in this cause, had been once before considered, in the case of The State v. Graves, and others, decided at Jackson in 1824; but as the Court was not unanimous in that decision, it was thought proper to permit the plaintiff in error to be hoard in this case on the same principle.
We believe that the loan office certificates are bills of credit, in the sense of the Constitution of the United States, and it only remains to be considered, whether the loan of them to the plaintiff in error is the act of emission prohibited by that Constitution ; for if it be, then the judgment of the Circuit Court must be reversed. By the tenth section of the first article of the Constitution, it is provided, among other things, that no State shall emit hills of credit, or make any thing hut gold and silver a tender in payment of debts. The thirteenth section of the act for the establishment of loan offices provides, that the certificates shall be receivable by all officers in the State, both civil and military, in the discharge of salaries and fees of office. Before the adoption of the federal Constitution, the States had passed law's for the emission of hills of credit for other purposes than those above mentioned. Private persons received them for property appropriated by law to public uses, and to render them more useful to the State, they were made a tender in payment of debts ; thus it was attempted to give them an imaginary value, at the expense of officers, both civil and military, and of other persons, whose services or property the State wanted, as well as of persons who had debts outstanding in the State. It must be here remembered, that in a state of war, when each State paid its own soldiers, it become *452 necessary to emit large sums. The depreciation of the credit of this paper was rapid, and the States, when they redeemed it, paid not its nominal value, hut its current price. The ruinous consequences to all classes of the community can easily he imagined. For the future protection of this meritorious part of the nation, above named, this provision in the Constitution must have been made. Had the States done nothing more than strew their bills of credit in the highways, (which it was contended in the argument would he an unconstitutional emission,) or loaned them to such as wished to borrow, we should not probably have ever heard of the Constitutional provision above mentioned. It is unjust and tyrannical to interfere in the contracts of two parties, able and willing to contract, when by their acts no evil is done to the community. But is contended, that by loans, a powerful party in the legislative body may succeed in putting into circulation more bills Of credit, and thereby prevent the collection of taxes in lawful money. When the meaning of the law is doubtful, the consequences of any particular construction ought to be well considered, and such construction ought to be given as will repress the evil and advance the remedy. A powerful party in the Legislature might be induced to attempt an emission of bills of credit, if they could hope to succeed. If borrowers, then, of bills of credit be compelled to pay, it seems to us that still there would be very few bills put into circulation through their instrumentality; the bills would sell very low, except in the time of collecting taxes, and even then they must sell for less than their nominal value. What is then the temptation to induce persons to hazard borrowing of the State ? On the contrary, should this judgment be reversed, in consequence of such a construction of the Constitution, a powerful party in the legislative body might attempt to emit bills of credit in the form of loan office certificates, or in some other form, whenever selfish considerations ruled them, and they could entertain a hope either of avoiding the payment of those bills borrowed from the State, or of compelling officers, civil and military, to receive them in discharge of their salaries or fees, or of making them, by indirect means, a tender in payment debts. For to make them of some value, they must circulate, and to give them currency, they must be sustained by some compulsory means. The Courts have refused to carry into execution an act of the Legislature, calculated to compel creditors to receive these bill of credit in discharge of debts. Let the borrowers pay, and they will be, at another time, mora cautious of borrowing, in the hope, at a more favorable time, of compelling officers to receive them in discharge of salaries and fees, and creditors to receive them in payment of debts.
The judgment of the Circuit Court is affirmed.